UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

**TUYET N. VAN,**

      **Plaintiff,**

      **vs.**                                  **Case No.: 3:25-cv-00187**

**DESTINY NICOLE FERGUSON**             **HON. ROBERT C. CHAMBERS**
**(individually & in her official capacity as**
**a Deputy for the Cabell County Sheriff's Office)**     **JURY TRIAL DEMANDED**

      **and**

**CABELL COUNTY SHERIFF'S OFFICE**
**(a West Virginia political subdivision)**

      **and**

**CHUCK ZERKLE**
**(individually and as the former Elected Sheriff of**
**Cabell County, West Virginia)**

      **and**

**DOUG ADAMS**
**(individually and as the now Elected Sheriff of Cabell County,**
**West Virginia)**

      **and**

**CABELL COUNTY COMMISSION**
**(a West Virginia political subdivision)**

      **and**

**JOHN DOE 1-10**

      **Defendants.**

## PLAINTIFF'S COMPLAINT

COMES NOW the Plaintiff Tuyet N. Van, by and through counsel Tyler C. Haslam and Haslam Law Firm LLC and Kerry A. Nessel and The Nessel Law Firm PLLC, and states as follows her causes of action against the Defendants:

## PRELIMINARY STATEMENT

1.     Plaintiff Tuyet N. Van was shot with a TASER by Defendant Destiny Nicole Ferguson of the Cabell County Sheriff's Office on or about April 5, 2024.

2.     As a direct result of Ferguson's actions, Ms. Van struck her head on what is believed to be a nail salon chair and sustained a traumatic brain injury.



3.     Ms. Van lost consciousness and had a scalp laceration that required, *inter alia*, five staples in order to heal.



4.    Ferguson did not offer immediate aid to Ms. Van and instead proceeded to place Ms. Van in handcuffs while threatening, "You need to hand me your hands or I'm gonna have to shock you again."



5.     The interaction between Ms. Van and Ferguson was captured on a bystander's cellular telephone video camera.

6.     Ferguson's use of her TASER against Ms. Van constituted improper pain compliance that violated all clearly established law regarding TASER use within the Fourth Circuit.

7.     Additionally, Ferguson's actions constitute an excessive use of force in violation of Ms. Van's constitutional rights and an illegal seizure in violation of state and federal law.

8.     Upon information and belief, Ferguson's supervisors at CCSO, notably Defendant Chuck Zerkle and Defendant Doug Adams, found no issue with Ferguson's actions on April 5, 2024, despite Ferguson clearly violating CCSO's own policies and procedures.

9.     Upon further information and belief, Ferguson was not disciplined for her actions.

10.     Ferguson also criminally charged Ms. Van without any permissible basis for said charges.

11.     This is a civil rights action for money damages for the injuries sustained by Ms. Van, resulting from the violations of her constitutional, statutory, and common law rights by Defendants.

12.     Ms. Van brings this action under 42 U.S.C. § 1983 ("section 1983"), 42 U.S.C. § 1985, 42 U.S.C. § 1986, and 42 U.S.C. § 1988 ("section 1988") to redress the deprivation under color of state law Plaintiff's rights secured by the United States Constitution.  More specifically, this Complaint seeks to redress the right to be afforded the protection of substantive due process under the Fourteenth Amendment to the United States Constitution.  Ms. Van also asserts Section 1983 Claims against John Doe 1 through John Doe 10, former Sheriff Zerkle, then-Chief Deputy and current Sheriff Adams, the Cabell County Sheriff's Office, and the Cabell County Commission

for failure to properly hire, train, and supervise law enforcement and for promulgating customs, policies, and practices, which proximately caused the violation of Plaintiffs' constitutional rights, all under the authority of *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978).  Ms. Van also asserts additional state law claims as set forth below.

## JURISDICTION AND VENUE

13.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

14.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as certain claims asserted herein arise under the Constitution and law of the United States, to wit, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

15.    This Court also has supplemental jurisdiction over state law claims asserted herein pursuant to 28 U.S.C. § 1367.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because substantially all of the events that give rise to the claims in this action occurred in Cabell County, West Virginia and said county is situated within the bounds of this Court's geographic area of responsibility.

## THE PARTIES

17.    Plaintiff Tuyet N. Van (hereinafter "Plaintiff" or "Ms. Van") is a citizen of the United States and was a resident of the State of West Virginia on April 5, 2024.

18.    Defendant Destiny Nicole Ferguson (hereinafter "Ferguson") is, and was at all times relevant herein, a law enforcement officer employed by the Cabell County Sheriff's Office and the Cabell County Commission as a deputy sheriff, who was acting under color of law and within the course and scope of her employment as a CCSO deputy when, *inter alia*, she caused

traumatic brain injury to Ms. Van on April 5, 2024. Defendant Ferguson is a "person" under 42 U.S.C. § 1983. Defendant Ferguson is sued herein in her individual and official capacities.

19.     Defendant Cabell County Sheriff's Office (hereinafter "CCSO") is a political subdivision within the meaning of W. Va. Code § 29-12A-1 *et seq.* CCSO promulgates policies, customs, and/or actions that give rise to its liability under 42 U.S.C.§ 1983.

20.     Defendant Cabell County Commission (hereinafter "CCC") is a political subdivision within the meaning of W. Va. Code § 29-12A-1 *et seq.* CCC promulgates policies, customs, and/or actions that give rise to its liability under 42 U.S.C.§ 1983.

21.     Defendant Chuck Zerkle (hereinafter "Zerkle") was the elected Sheriff of Cabell County, West Virginia at the time Ms. Van's constitutional rights were violated. As Sheriff, he was bound to hire, supervise, and train his deputies in accordance with state and federal law and to implement policies and procedures that ensure the rights of all citizens are protected. Defendant Zerkle is a "person" under 42 U.S.C. § 1983. Defendant Zerkle is sued herein in his individual and official capacities.

22.     Defendant Doug Adams (hereinafter "Adams") was the Chief Deputy for the CCSO at the time Ms. Van's constitutional rights were violated. As Chief Deputy, he was bound to hire, supervise, and train his subordinate deputies in accordance with state and federal law and to implement policies and procedures that ensure the rights of all citizens are protected. Defendant Adams is now the elected Sheriff of Cabell County, West Virginia. Defendant Adams is a "person" under 42 U.S.C. § 1983. Defendant Adams is sued herein in his individual and official capacities.

23.     Defendants John Doe 1-10 (hereinafter "Doe Defendants") are, and were at all times relevant herein, employed by HPD and/or the City of Huntington, who were acting under color of law within the course and scope and in furtherance of their employment. Doe Defendants

1-10 are "person[s]" under 42 U.S.C. § 1983.  Defendants Doe 1-10 are sued herein in their individual and official capacities.

## COMMON FACTUAL ALLEGATIONS

24.     Ferguson went to Ms. Van's place of employment on April 5, 2024 because of a civil contract dispute between Ms. Van and a local automotive business.

25.     While Ms. Van was working with a customer, Ferguson told Ms. Van that she was "either going to come now [to the automotive business] or you're gonna go to jail."

26.     Ferguson, without reason or authority to do so, forcefully grabbed Ms. Van by the arm.

27.     Ms. Van, for whom English is not her native language, stood up with her cellular telephone and attempted to place a call for assistance.

28.     Ms. Van walked towards the rear of her shop with Ferguson following her.

29.     Ferguson forcefully grabbed Ms. Van by the arm and stated, "Now you're obstructing so I'll get you for obstructing too."

30.     Ferguson led Ms. Van to the front of Ms. Van's shop.

31.     While Ms. Van was calling Cabell County 911, Ferguson placed a handcuff on Ms. Van's wrist.

32.     As Ms. Van tried to explain her side of the story and that she'd done nothing wrong, Ferguson remarked "You're obstructing everything I'm saying."

33.     Ms. Van had her telephone on speaker phone.

34.     Cabell County 911 answered Ms. Van's call.

35.     As Cabell County 911 came on Ms. Van's telephone line, Ferguson pulled her TASER from its holster.

36.    Ms. Van attempted to explain to Cabell County 911 what was occurring.

37.    Ferguson, with her TASER still drawn, calmly radioed back to dispatch that, "I'm here right now.  She is obstructing everything I'm saying."

38.    Ms. Van walked from the front entrance where Ferguson was located towards the customer area at the rear of her shop while still on the phone with Cabell County 911.

39.    Ferguson told Ms. Van and a bystander, "Do you understand why I'm here?  I'm trying to help you all out so she does not go to jail.  He said he didn't want to press charges if she goes over there and pays her bill."

40.    Confusingly, Ferguson then says, "This is a criminal matter.  What you all have going on between them, is between insurance, and is a civil matter.  Afterwards, you guys can go to court.  But if I come here, she goes and pays that bill, y'all go to court, you can get that money back or whatever you gotta do, that stops her from going to jail.  But I'm now going to take her, because she's obstructing."

41.    Ferguson then walks to the customer area where Ms. Van was located and grabs the wrist that was previously handcuffed.

42.    Ferguson, who at some point re-holstered her TASER, draws it again.

43.    Ferguson placed the TASER on Ms. Van's back and activated it.

44.    Ferguson then stated, "You better give me that hand.  Give me the hand.  Give me the hand."

45.    Ms. Van responded, "Okay, please . . ." and the next sound is a loud bang and the TASER being activated a second time, followed by a muffled scream, and another loud noise which, upon information and belief, was Ms. Van striking the ground.

46.    Ferguson then aggressively stated to an unconscious Ms. Van, "Turn over."

47.    Ms. Van eventually regained consciousness and was clearly disoriented.

48.    A bystander states, "You shot her!"

49.    Ferguson replied, "She's obstructing."

50.    Ms. Van, who just regained consciousness, was clearly disoriented and did not understand what was occurring.

51.    Ferguson stated, "You need to hand me your hands or I'm going to have to shock you again."

52.    One of Ms. Van's customers was wearing scrubs and appeared to be a medical professional employed at a local medical facility.  She attempted to render aid to Ms. Van.

53.    Ms. Van, with blood running down her neck, stated, "I'm going to die."



54.    Ms. Van was not violent, and Ferguson could not articulate her as being violent or potentially violent at any point in time during the encounter.

55.    Ms. Van did not present an immediate safety risk to Ferguson or others when Ferguson first used the TASER.

56.     Ms. Van did not present an immediate safety risk to Ferguson or others when Ferguson used the TASER a second time.

57.     Ferguson's use of her TASER both times was improper pain compliance.

58.     Ferguson attempted to justify her wrongful conduct after the fact by criminally charging Ms. Van.

59.     The criminal complaints filed by Ferguson are inaccurate and contain several falsities.

60.     Ferguson charged Ms. Van with violations of W. Va. Code § 61-3-24(a)(1): Obtaining money, goods or other property by false pretenses; W. Va. Code § 61-5-17(a): Obstruct law-enforcement, probation, parole, court security, corrections officer w/ threats of harm; and W. Va. Code § 61-5-17(d): Fleeing from law enforcement officer to evade arrest by means other than a vehicle.

61.     Notably, at no point did Ms. Van ever threaten Ferguson or any other person.

62.     Further, Ferguson did not have reason to arrest or detain Ms. Van on a civil dispute.

63.     The false criminal charges against Ms. Van were dismissed in Cabell County Magistrate Court on April 30, 2024.

## Count I
### (42 U.S.C. § 1983 – Excessive Force Against Ferguson for the First TASER Use)

64.     Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

65.     As set forth above, Ferguson was acting under color of law and within the scope of her employment as a deputy with CCSO and CCC when she acted with reckless indifference to the rights of Tuyet Van by deploying a TASER against Ms. Van when Ferguson could not articulate Ms. Van as being violent or potentially violent and when Ms. Van did not cause Ferguson

to be confronted with an exigency that created an immediate safety risk that was likely to be cured by use of the TASER.

66.    At the time she used the TASER on Ms. Van, Ferguson was clothed with the authority of the CCSO and CCC.

67.    Ferguson's action in the first TASER deployment on Ms. Van violated the constitutional rights guaranteed to Ms. Van under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

68.    Ferguson's first TASER usage was not taken in good faith and was in violation of clearly established law, namely *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902 (4th Cir. 2016), *cert. denied Vill. of Pinehurst v. Estate of Armstrong*, 580 U.S. 818 (2016).

69.    Ferguson cannot assert the defense of qualified immunity with respect to the first TASER use because "[Fourth Circuit] precedent, consequently, makes clear that tasers are proportional force <u>only</u> when deployed in a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser," *id.* at 903 (emphasis in original), and "law enforcement officers should now be on notice that such taser use violates the Fourth Amendment." *Id*. at 911.

70.    Ferguson violated the constitutional rights of Ms. Van, as described and identified throughout this Complaint, by using excessive, wrongful, and unnecessary force by using a TASER on Ms. Van on April 5, 2024.

71.    When Ferguson first deployed her TASER against Ms. Van and used excessive force against Ms. Van, no objectively reasonable law enforcement officer could have perceived the force as necessary.

72. As a proximate result of Ferguson's action in using a TASER the first time, Ms. Van was injured.

73. As a proximate result of Ferguson's action in using a TASER the first time, Ms. Van suffered medical and other expenses.

74. By the acts and omissions described above, Ferguson violated 42 U.S.C. § 1983 by depriving Ms. Van of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution:

    a. The right to be free of unlawful, reckless, deliberately indifferent, and/or conscious shocking conduct as secured by the Fourteenth Amendment;

    b. The right to be free from deprivation of life, liberty and property without substantive due process as secured by the Fourteenth Amendment;

    c. The right to be free from state created/enhanced danger as secured by the Fourteenth Amendment;

    d. The right to receive immediate and proper aid from law enforcement;

    e. And any and all such other conduct as may be learned through the course of discovery.

75. Ferguson's conduct in her first TASER use against Ms. Van was unnecessary, unreasonable, and outrageous, and constitutes wanton, willful, reckless, unjustifiable, and malicious conduct warranting the imposition of exemplary punitive damages against Ferguson in her individual capacity as a Defendant.

76. As a direct result of Ferguson's unconstitutional action in using the TASER against Ms. Van the first time, Ms. Van seeks to recover damages in an amount to be determined by a jury to compensate her for:

    a.   Violation of her federally protected rights;

    b.   Physical pain and suffering, past and future;

    c.   Mental pain and suffering, past and future;

    d.   Injuries resulting from Ferguson's conduct;

    e.   Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

    f.   All other injuries proximately caused by Ferguson.

77.    In addition to these compensatory damages, Ms. Van also seeks to recover under 42 U.S.C. § 1988 the attorney fees and costs incurred the course of this litigation.

78.    In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights in the future, Ms. Van seeks to have the Court order Ferguson and the other defendants to undergo additional training and education addressing Ferguson's use of excessive and wrongful force, the development of policies to preclude such actions in the future, and the implementation of discipline against Ferguson to hold her accountable for her wrongful actions.

79.    Ferguson's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Ms. Van, thereby entitling Ms. Van to punitive damages in an amount to be determined by the jury.

## **<u>Count II</u>**
## **(42 U.S.C. § 1983 – Excessive Force Against Ferguson for the Second TASER Use)**

80.    Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

81.    As set forth above, Ferguson was acting under color of law and within the scope of her employment as a deputy with CCSO and CCC when she acted with reckless indifference to

the rights of Tuyet Van by deploying a TASER against Ms. Van a second time when Ferguson could not articulate Ms. Van as being violent or potentially violent and when Ms. Van did not cause Ferguson to be confronted with an exigency that created an immediate safety risk that was likely to be cured by use of the TASER.

82.    At the time she used the TASER on Ms. Van a second time, Ferguson was clothed with the authority of the CCSO and CCC.

83.    Ferguson's action in the second TASER deployment on Ms. Van violated the constitutional rights guaranteed to Ms. Van under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

84.    Ferguson's second TASER usage was not taken in good faith and was in violation of clearly established law, namely *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902 (4th Cir. 2016), *cert. denied Vill. of Pinehurst v. Estate of Armstrong*, 580 U.S. 818 (2016).

85.    Ferguson cannot assert the defense of qualified immunity with respect to the second TASER use because "[Fourth Circuit] precedent, consequently, makes clear that tasers are proportional force only when deployed in a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser," *id.* at 903 (emphasis in original), and "law enforcement officers should now be on notice that such taser use violates the Fourth Amendment." *Id*. at 911.

86.    Ferguson violated the constitutional rights of Ms. Van, as described and identified throughout this Complaint, by using excessive, wrongful, and unnecessary force by using a TASER on Ms. Van a second time on April 5, 2024.

87.    When Ferguson deployed her TASER against Ms. Van a second time and used excessive force against Ms. Van, no objectively reasonable law enforcement officer could have perceived the force as necessary.

88.    As a proximate result of Ferguson's action in using a TASER the second time, Ms. Van was injured.

89.    As a proximate result of Ferguson's action in using a TASER the second time, Ms. Van suffered medical and other expenses.

90.    By the acts and omissions described above, Ferguson violated 42 U.S.C. § 1983 by depriving Ms. Van of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution:

  a.  The right to be free of unlawful, reckless, deliberately indifferent, and/or conscious shocking conduct as secured by the Fourteenth Amendment;

  b.  The right to be free from deprivation of life, liberty and property without substantive due process as secured by the Fourteenth Amendment;

  c.  The right to be free from state created/enhanced danger as secured by the Fourteenth Amendment;

  d.  The right to receive immediate and proper aid from law enforcement;

  e.  And any and all such other conduct as may be learned through the course of discovery.

91.    Ferguson's conduct in her second TASER use against Ms. Van was unnecessary, unreasonable, and outrageous, and constitutes wanton, willful, reckless, unjustifiable, and malicious conduct warranting the imposition of exemplary punitive damages against Ferguson in her individual capacity as a Defendant.

92.     As a direct result of Ferguson's unconstitutional action in using the TASER against Ms. Van the second time, Ms. Van seeks to recover damages in an amount to be determined by a jury to compensate her for:

        a.   Violation of her federally protected rights;

        b.   Physical pain and suffering, past and future;

        c.   Mental pain and suffering, past and future;

        d.   Injuries resulting from Ferguson's conduct;

        e.   Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

        f.   All other injuries proximately caused by Ferguson.

93.     In addition to these compensatory damages, Ms. Van also seeks to recover under 42 U.S.C. § 1988 the attorney fees and costs incurred the course of this litigation.

94.     In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights in the future, Ms. Van seeks to have the Court order Ferguson and the other defendants to undergo additional training and education addressing Ferguson's use of excessive and wrongful force, the development of policies to preclude such actions in the future, and the implementation of discipline against Ferguson to hold her accountable for her wrongful actions.

95.     Ferguson's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Ms. Van, thereby entitling Ms. Van to punitive damages in an amount to be determined by the jury.

**Count III**
**(42 U.S.C. § 1983 – Excessive Force Against Ferguson After Ms. Van Was Rendered Unconscious)**

96.     Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

97.     As set forth above, Ferguson was acting under color of law and within the scope of her employment as a law enforcement officer with CCSO and CCC when she acted with reckless indifference to the rights of Tuyet Van by using excessive force against Ms. Van while she was prone on the ground after being shot and injured.

98.     At the time Ferguson used excessive force against the person of Ms. Van, Ferguson was clothed with the authority of the CCSO and CCC.

99.     Ferguson's actions in using excessive force against Ms. Van while she was prone on the ground after being shot and injured violated the constitutional rights guaranteed to Ms. Van under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

100.    Ferguson's actions in using excessive force against Ms. Van while she was prone on the ground after being shot and injured were not taken in good faith and were in violation of clearly established law.

101.    Ferguson violated the constitutional rights of Ms. Van, as described and identified throughout this Complaint, by using excessive, wrongful, and unnecessary force against Ms. Van after she was prone on the ground following being shot and injured on April 5, 2024.

102.    When Ferguson used excessive force against Ms. Van while Ms. Van was prone on the ground and injured, no objectively reasonable law enforcement officer could have perceived the force as necessary.

103.    As a proximate result of Ferguson's actions in using excessive force against Ms. Van while Ms. Van was prone on the ground, Ms. Van was injured.

104.    As a proximate result of Ferguson's actions in using excessive force against Ms. Van while Ms. Van was prone on the ground and injured, Ms. Van suffered medical and other expenses.

105.    By the acts and omissions described above, Ferguson violated 42 U.S.C. § 1983 by depriving Ms. Van of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution:

a. The right to be free of unlawful, reckless, deliberately indifferent, and/or conscious shocking conduct as secured by the Fourteenth Amendment;

b. The right to be free from deprivation of life, liberty and property without substantive due process as secured by the Fourteenth Amendment;

c. The right to be free from state created/enhanced danger as secured by the Fourteenth Amendment;

d. The right to receive immediate and proper aid from law enforcement;

e. And any and all such other conduct as may be learned through the course of discovery.

106.    Ferguson's conduct in using excessive force against Ms. Vans while she was prone on the ground and injured was unnecessary, unreasonable, and outrageous, and constitutes wanton, willful, reckless, unjustifiable, and malicious conduct warranting the imposition of exemplary punitive damages against Ferguson in her individual capacity as a Defendant.

107.    As a direct result of Ferguson's unconstitutional action in using excessive force against Ms. Van while Ms. Van was prone on the ground and injured, Ms. Van seeks to recover damages in an amount to be determined by a jury to compensate her for:

      a.  Violation of her federally protected rights;

      b.  Physical pain and suffering, past and future;

      c.  Mental pain and suffering, past and future;

      d.  Injuries resulting from Ferguson's conduct;

      e.  Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

      f.  All other injuries proximately caused by Ferguson.

108.    In addition to these compensatory damages, Ms. Van also seeks to recover under 42 U.S.C. § 1988 the attorney fees and costs incurred the course of this litigation.

109.    In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights in the future, Ms. Van seeks to have the Court order Ferguson and the other defendants to undergo additional training and education addressing Ferguson's use of excessive and wrongful force, the development of policies to preclude such actions in the future, and the implementation of discipline against Ferguson to hold her accountable for her wrongful actions.

110.    Ferguson's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Ms. Van, thereby entitling Ms. Van to punitive damages in an amount to be determined by the jury.

**Count IV**
**(42 U.S.C. § 1983 – Unlawful Search and Seizure by Ferguson)**

111.    Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

112.    Ferguson, while acting under the color of law, violated the constitutional rights of Ms. Van by searching and seizing the person of Ms. Van on April 5, 2024.

113.    The actions of Ferguson in searching and seizing the person of Ms. Van on April 5, 2024 violated the constitutional rights guaranteed to Ms. Van under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

114.    The actions of Ferguson in searching and seizing the person of Ms. Van on April 5, 2024 were not taken in good faith and were in violation of clearly established law.

115.    Ferguson violated the constitutional rights of Ms. Van, as described and identified herein, by unlawfully seizing the person of Ms. Van on April 5, 2024.

116.    Ferguson's seizure of the person of Ms. Van on April 5, 2024 was unlawful, as Ferguson could not have believed that she had legal authority to seize the person of Ms. Van given that Ms. Van had not committed, was not committing, nor was about to commit a criminal offense.

117.    By the acts and omissions described above, Ferguson violated 42 U.S.C. § 1983 by depriving Ms. Van of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution:

        a.    The right to be free of unlawful, reckless, deliberately indifferent, and/or conscious shocking conduct as secured by the Fourteenth Amendment;

        b.    The right to be free from deprivation of life, liberty and property without substantive due process as secured by the Fourteenth Amendment;

    c.  The right to be free from state created/enhanced danger as secured by the Fourteenth Amendment;

    d.  The right to receive immediate and proper aid from law enforcement;

    e.  And any and all such other conduct as may be learned through the course of discovery.

118.    As a direct and proximate result of Ferguson's unconstitutional actions, Ms. Van seeks to recover damages in an amount to be determined by the jury to compensate her for:

    a.  Violation of her federally protected rights;

    b.  Physical pain and suffering, past and future;

    c.  Mental pain and suffering, past and future;

    d.  Injuries resulting from the defendants' conduct;

    e.  Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

    f.  All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

119.    In addition to these compensatory damages, Ms. Van also seeks to recover under 42 U.S.C. § 1988 the attorney fees and costs incurred the course of this litigation.

120.    In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights in the future, Ms. Van seeks to have the Court order Ferguson and the other defendants to undergo additional training and education addressing Ferguson's use of excessive and wrongful force, the development of policies to preclude such actions in the future, and the implementation of discipline against Ferguson to hold her accountable for her wrongful actions.

121.    Ferguson's actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Ms. Van, thereby entitling Ms. Van to punitive damages in an amount to be determined by the jury.

### Count V
### (42 U.S.C. § 1983 – Malicious Prosecution Against Ferguson)

122.    Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

123.    Ferguson filed a false criminal complaint against Ms. Van for violations of the West Virginia Code without basis to do so.

124.    Ferguson crafted a false narrative of events to support her actions against Ms. Van on April 5, 2024.

125.    At the time that Ms. Van was seized, Ferguson knew that Ms. Van was seized without probable cause.

126.    The criminal proceedings against Ms. Van terminated in her favor on April 30, 2024 with a dismissal entered in the Cabell County Magistrate Court.

127.    The malicious prosecution of Ms. Van constitutes a deprivation under law without due process for which the defendants are liable.

128.    The actions of Ferguson in maliciously prosecuting Ms. Van violated the constitutional rights guaranteed to Ms. Van under the Fourth and/or Fourteenth Amendments to the United States Constitution.

129.    The actions of Ferguson in maliciously prosecuting Ms. Van were not taken in good faith and were in violation of clearly established law.

130.    The actions of Ferguson violated the constitutional rights of Ms. Van, as described and identified herein, by maliciously prosecuting Ms. Van, and that prosecution terminated in favor of Ms. Van.

131.    When Ferguson sought to maliciously prosecute Ms. Van, she knew that no objectively reasonable law enforcement officer could have perceived those actions as appropriate or necessary.

132.    By the acts and omissions described above, Ferguson violated 42 U.S.C. § 1983 by maliciously prosecuting under clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution.

133.    As a direct and proximate result of these unconstitutional actions in maliciously prosecuting her, Ms. Van seeks to recover damages in an amount to be determined by the jury to compensate her for:

a.    Violation of her federally protected rights;

b.    Injuries resulting from the defendants' conduct;

c.    Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

d.    All other injuries proven by a preponderance of the evidence proximately caused by the defendants.

134.    In addition to these compensatory damages, Ms. Van also seeks to recover under 42 U.S.C. § 1988 the attorney fees and costs incurred the course of this litigation.

135.    In an effort to prevent other similarly situated individuals from suffering the same violation of their constitutional rights in the future, Ms. Van seeks to have the Court order these defendants to undergo additional training and education addressing the defendants' malicious

prosecution, the development of policies to preclude such actions in the future, and the implementation of discipline against these defendants to hold them accountable for their wrongful actions.

## **Count VI**
### **(42 U.S.C. § 1983 – *Monell* Liability for Failure to Hire, Train, and Supervise, and for Customs, Policies, and Practices Causing Violations of the Fourteenth Amendment)**

136.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

137.    Zerkle, Adams, CCSO, and CCC have engaged in a pattern, practice, or custom of failing to adequately train and/or supervise its employee law enforcement officers on the appropriate use of force, lawful detention, and rendering medical care, such that Zerkle, Adams, CCSO, and CCC exercised deliberate indifference to the rights of Ms. Van.

138.    The deprivation of Ms. Van's rights were caused by the implementation of customs, policies, and/or official act/omissions of Zerkle, Adams, CCSO, and CCC, to wit: failure to adequately train, supervise, and discipline officers regarding violations of citizens' constitutional rights including the justified use of force.

139.    Zerkle, Adams, CCSO, and CCC failed to adequately train Ferguson for employment with CCSOs by failing to ensure that she was properly certified to carry and use a TASER.

140.    Zerkle, Adams, CCSO, and CCC failed to adequately train Ferguson on the law so that she understood when seizure and detention of a person was constitutionally permissible.

141.    The lack of training demonstrated by defendants, as set forth above, demonstrates a deliberate indifference to the rights of Ms. Van, and the defendants need for training is plainly obvious by the action(s) and/or inaction(s) that they took.

142.    The above-referenced failures in the preceding paragraphs were the actual and proximate cause of the deprivation(s) of the constitutional rights of Ms. Van.

143.    Zerkle, Adams, CCSO, and CCC failed to adequately supervise Ferguson during the course of her employment with CCSO, including providing the requisite level of supervision to ensure that Ferguson, as well as other similarly situated CCSO officers, were properly trained and certified to carry and use TASERs and that citizens were seized only when there was a constitutionally permissible basis to do so.

144.    The defendants in the preceding paragraph had actual or constructive knowledge that Ferguson was not properly trained or certified to carry and use a TASER, and Ferguson's lack of training and certification posed a severe, pervasive, and unreasonable risk of constitutional injury to citizens.

145.    The response of the defendants in allowing Ferguson to carry and use a TASER without proper training or certification shows a deliberate indifference and/or tacit authorization of allowing Ferguson to ignore CCSO's own policies, as well as the certification requirements mandated by TASER.

146.    In this instance, the inaction of those with supervisory control over Ferguson, including Zerkle, Adams, CCSO, and CCC, in failing to ensure that Ferguson was properly trained and certified to carry and use a TASER caused the injuries suffered by Ms. Van.

147.    The failure to train and failure to supervise were systematic and amount to a deliberate indifference to the rights of citizens with whom Ferguson was likely to come into contact, as the training was so deficient that it was understood that Ferguson was likely to cause injury.

148.    Additionally and/or alternatively, upon information and belief, Zerkle, Adams, CCSO, and CCC, implemented customs and policies for training and supervision of CCSO deputies with regard to TASER use and seizure of citizens, that, on their face, violate the Fourteenth Amendment.    Alternatively, upon information and belief, the aforementioned defendants implemented otherwise facially valid customs and policies in a manner such that constitutional violations were likely to be and were visited upon those inhabiting, visiting, or otherwise within the jurisdictional limits of Cabell County.

149.    Zerkle, Adams, CCSO, and CCC, by these acts and omissions, exhibited deliberate indifference to the unreasonable risk of the unlawful deprivation of citizens' constitutional rights, which their customs and policies pose.

150.    These customs and policies violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under Article III, Sections 1, 6, and 10 of the West Virginia Constitution.

151.    As a direct and proximate result of the customs, policies, and practices described herein and permitted by defendants, which violate the Fourteenth Amendment on their face, or otherwise are applied in a manner such that Fourteenth Amendment violations are likely to occur, Ms. Van was forced to endure and suffer, and continues to endure and suffer extreme physical, mental, and emotional pain and suffering and pecuniary loss.

152.    In addition to these compensatory damages, Ms. Van also seeks to recover, under 42 U.S.C. § 1988 the attorney fees and costs incurred during the course of this litigation.

153.    The actions and/or inactions of Defendants were reprehensible, willful, wanton, malicious, and in blatant and intentional disregard of the rights owed to Plaintiffs, thereby justifying an award of punitive damages, to the extent that such damages are permitted.

## Count VII
### (State Law Battery)

154.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

155.    Ferguson committed batteries of Ms. Van.

156.    Ferguson committed two batteries by twice using her TASER on Ms. Van.

157.    Ferguson committed battery with the manner in which she physically handled Ms. Van after she was shot.

158.    Ferguson, at each instance, intended to cause a harmful or offensive touching of Ms. Van.

159.    Ferguson, at each instance, did cause harmful and offensive touching of Ms. Van.

160.    As a direct and proximate result of Ferguson's batteries against her, Ms. Van suffered injury, to include traumatic brain injury.

161.    As a direct and proximate result of Ferguson's batteries, Ms. Van seeks to recover damages in an amount to be determined by a jury to compensate her for:

    a.    Physical pain and suffering, past and future;

    b.    Mental pain and suffering, past and future;

    c.    Injuries resulting from the defendants' conduct;

    d.    Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

    e.    All other injuries proven by a preponderance of the evidence proximately caused by these defendants.

162.    The actions of Ferguson in causing batteries to Ms. Van were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to

Ms. Van, thereby entitling Ms. Van to punitive damages in an amount to be determined by the jury.

**Count VIII**
**(State Law Assault)**

163.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

164.    Ferguson committed common law assault against Ms. Van after Ferguson's first TASER use.

165.    Ferguson intended to place Ms. Van in apprehension of harmful and offensive contact after the first TASER shot once she had the attention of Ms. Van.

166.    Ms. Van was in immediate apprehension of harmful and offensive contact after each TASER use.

167.    As a direct and proximate result of Ferguson's assaults against her, Ms. Van suffered injury, to include traumatic brain injury.

168.    As a direct and proximate result of Ferguson's assaults, Ms. Van seeks to recover damages in an amount to be determined by a jury to compensate her for:

a.    Physical pain and suffering, past and future;

b.    Mental pain and suffering, past and future;

c.    Injuries resulting from the defendants' conduct;

d.    Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

e.    All other injuries proven by a preponderance of the evidence proximately caused by these defendants.

169.     The actions of Ferguson in causing batteries to Ms. Van were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Ms. Van, thereby entitling Ms. Van to punitive damages in an amount to be determined by the jury.

**Count IX**
**(Negligence)**

170.     Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

171.     Ferguson was negligent in utilizing her TASER against Ms. Van.

172.     Ferguson had a duty to only deploy her TASER against those who were violent and who presented an immediate safety risk to others.

173.     Ferguson breached that duty when she deployed her TASER against Ms. Van, because Ms. Van was not violent and did not present an immediate safety risk to others.

174.     As a direct and proximate result of Ferguson's negligence, Ms. Van suffered damage.

175.     As a direct and proximate result of Ferguson's negligence, Ms. Van seeks to recover damages in an amount to be determined by a jury to compensate her for:

    a.   Physical pain and suffering, past and future;

    b.   Mental pain and suffering, past and future;

    c.   Injuries resulting from the defendants' conduct;

    d.   Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

    e.   All other injuries proven by a preponderance of the evidence proximately caused by these defendants.

176.   Ferguson's negligence against Ms. Van was reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Ms. Van, thereby entitling Ms. Van to punitive damages in an amount to be determined by the jury.

## Count X
### (State Law Negligent Training/Supervision)

177.   Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

178.   Zerkle, Adams, CCSO, and CCC failed to properly train and/or supervise Ferguson and others regarding TASER use, the use of force, and lawful seizure of citizens.

179.   As a proximate result of the aforementioned defendants' actions and/or omissions, Ms. Van suffered injury, to include traumatic brain injury.

180.   As a direct and proximate result of the failures in training and supervision, Ms. Van seeks to recover damages in an amount to be determined by a jury to compensate her for:

   a.   Physical pain and suffering, past and future;

   b.   Mental pain and suffering, past and future;

   c.   Injuries resulting from the defendants' conduct;

   d.   Indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation; and

   e.   All other injuries proven by a preponderance of the evidence proximately caused by these defendants.

181.   The failures in training and supervision that harmed Ms. Van were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to Ms. Van, thereby entitling Ms. Van to punitive damages in an amount to be determined by the jury.

## Count XI
**(State Law Intentional and/or Negligent Infliction of Emotional Distress)**

182.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

183.    The acts and conduct of the Defendants as set forth above in paragraphs 1 through 182 is extreme and outrageous.  Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Ms. Van, as is more fully alleged above.

184.    It was reasonably foreseeable that Ms. Van would suffer serious emotional distress as a result of being injured by Ferguson.

185.    The conduct of the defendants, as set forth above in all paragraphs and incorporated by reference herein, caused Ms. Van serious emotional distress as a direct result of having her civil rights violated, to include suffering traumatic brain injury.

186.    The actions and conduct of defendants did directly and proximately cause severe emotional distress to Ms. Van, and thereby constituted intentional and/or negligent infliction of emotional distress.

187.    Additionally and/or alternatively, the misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

188.    As a direct and proximate result of defendants' wrongful acts, Ms. Van suffered damages, including, but not limited to, severe emotional distress and anguish, as is more fully alleged above.

## Count XII
### (State Constitutional Violations)

189.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

190.    In addition to the federal constitutional claims set forth above, Ms. Van alleges a constitutional tort action under the West Virginia Constitution, pursuant to the common law of West Virginia, and this cause of action is specifically not filed pursuant to 42 U.S.C. § 1983 or any other related federal statute.

191.    The actions and/or inactions of defendants violated the constitutional rights guaranteed to Plaintiffs under Article III, Sections 1, 9, and 10 of the West Virginia Constitution.

192.    The actions and/or inactions of defendants also violated the constitutional rights guaranteed to Plaintiffs under the United States Constitution, as set forth previously.

193.    The actions and/or inactions of defendants were not taken in good faith and were in violation of clearly established law.

194.    Defendants violated the constitutional rights of Ms. Van by, *inter alia*, failing to ensure that Ms. Van was not deprived of life, liberty, or pursuing and obtaining happiness and safety on April 5, 2024 and beyond.

195.    As a proximate result of defendants' actions, Ms. Van seeks to recover damages for her injuries.

196.    The actions and/or inactions of defendants against Ms. Van were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard of the rights owed to Ms. Van, thereby justifying an award of punitive damages, to the extent that such damages are permitted.

## DAMAGES

197.    Plaintiff realleges and incorporates by reference each and every allegation above as if set forth herein.

198.    As a consequence, of the actions and inactions of the Defendants, as stated herein, whether individually, jointly, or severally, Plaintiff Tuyet N. Van has suffered damages.

199.    More specifically, Plaintiff seeks compensation for:

   a.   Compensatory damages in an amount that will fully and fairly compensate her for her injuries, both general and special;

   b.   Punitive damages against Defendants in an amount that will serve to adequately punish and deter the conduct alleged herein;

   c.   Costs of suit and reasonable attorneys' fees;

   d.   Pre-judgment interest;

   e.   Post-judgment interest; and

   f.   All such other relief to which Plaintiffs are entitled and/or the Court deems necessary and just.

200.    Defendants' actions or inactions constitute a conscious, willful, malicious, reckless, and outrageous indifference to the health, safety, and welfare of Ms. Van. As such, Ms. Van is entitled to recover punitive damages from these Defendants.

201.    Any statutory cap or limit on any element of damages sought herein violates Plaintiff's right to due process, equal protection, and other rights guaranteed to Plaintiffs under the West Virginia Constitution, the United States Constitution, and other relevant legal authorities. Ms. Van seeks to recover and be made whole for the full and fair amount of compensatory and punitive

damages to which they are entitled to recover without such damages being unconstitutionally limited by statutory caps.

## PRAYER

**WHEREFORE,** Ms. Van does hereby demand judgment of and from the Defendants in this matter, for compensatory damages for all economic and noneconomic losses, as allowable under applicable state and federal law, including general, special, and incidental damages; punitive damages, in an amount to be established by the evidence; prejudgment and post-judgment interest; reasonable attorney fees and costs expended in the prosecution of this lawsuit, including, but not limited to, such reasonable costs and fees as may be awarded under 42 U.S.C. § 1988; and for any and all other relief that this Honorable Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**PLAINTIFF**,
By counsel

/s/Tyler Haslam
Tyler C. Haslam (W. Va. Bar No. 11522)
*HASLAM LAW FIRM LLC*
Post Office Box 585
Huntington, WV 25710
T:  (304) 948-8529
F:  (561) 948-8282
tyler@haslamlawfirm.com

Kerry A. Nessel (W. Va. Bar No. 7916)
The Nessel Law Firm PLLC
418 Ninth Street
Huntington, WV 25701
T: (304) 697-6377
nessel@comcast.net