**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

TUYET N. VAN,

Plaintiff,

v. CIVIL ACTION NO. 3:25-0187

DESTINY NICOLE FERGUSON,
individually & in her official capacity as a
Deputy for the Cabell County Sheriff's Office,
CHUCK ZERKLE,
individually and as the former Elected Sheriff of
Cabell County, West Virginia,
DOUG ADAMS,
individually and as the now Elected Sheriff of
Cabell County, West Virginia,
CABELL COUNTY COMMISSION,
a West Virginia political subdivision, and
JOHN DOE 1-10,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Destiny Nicole Ferguson's Motion for Summary Judgment (ECF No. 60, Def.'s Mot.). For the reasons stated below, the Court **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

**BACKGROUND**

Following an accident, Plaintiff Tuyet N. Van took her vehicle to Express Oil Change & Tire to have it repaired. *See* Def.'s Mot., Ex. 2, Ferguson Dep. 191. When Ms. Van came to pick up her vehicle, she asked to test-drive it before paying for the repairs. Def.'s Mot., Ex. 1, CCSO Rpt. 3. An Express Oil employee, Bobby Dement, agreed but told Van he would need to accompany her. *See id.* Dement claims Van got in the vehicle and locked the doors before Dement

could join her. *See id.* According to Dement, Van then sped away and parked her vehicle across the street at Sunny Nails, a nail salon where she worked. *See id.*; Ferguson Dep. 195.

Express Oil's manager, Harry Wilks, went to the salon and asked Van to pay her bill. CCSO Rpt. 3. Van refused. *Id.* Mr. Wilks then contacted law enforcement. *Id.*

Defendant Destiny Nicole Ferguson, a Deputy with the Cabell County Sheriff's Office, went to Sunny Nails to speak with Ms. Van. *See id.* Van asked Ferguson if she was there "to talk to her about the man across the street." *Id.* Van confirmed she left Express Oil without paying her bill. *See id.* She said she did so because Express Oil had damaged her vehicle. *See id.*

Deputy Ferguson asked Ms. Van to accompany her to Express Oil so Van could pay her bill. *See id.* Van refused. *See id.* Ferguson then told Van "[y]ou're either gonna come now, or you're gonna go to jail." ECF No. 64, Video 1, at 0:01–0:04.

Ms. Van started walking away from Ferguson. *See id.* at 0:09–0:16. Ferguson tried to escort Van towards the front of the salon. *See id.* at 0:16–0:28. Ferguson eventually handcuffed one of Van's wrists, but Van pulled her arm away as Ferguson tried to secure the other wrist. *See id.* at 1:13–1:18.

Deputy Ferguson then decided to use her Taser to subdue Ms. Van. CCSO Rpt. 3. Ferguson's Taser had two different modes. *See* Ferguson Dep. 294. Its "drive-stun mode" "cause[s] physical pain and discomfort," while its "probe mode" incapacitates the target. *Id.* at 41; *see id.* at 295; Crime & Misconduct Comm'n, Facts About Tasers (2008), https://perma.cc/B239-BYA7. Ferguson first attempted to "drive-stun" Van, but this was ineffective. *See* CCSO Rpt. 3. Ferguson then used the Taser's "probe mode." *See* Ferguson Dep. 294–95. Van fell to the ground, striking her head. *See id.* at 3:02–3:05. She started bleeding. CCSO Rpt. 3.

Deputy Ferguson ordered Ms. Van to turn around so Ferguson could handcuff her. *See id.* at 3:05–3:11. She told Van she would "shock [her] again" if she did not give up her hands. *See id.* at 3:33–3:35. Van continued resisting but eventually complied. *See id.* at 3:11–3:59. Ferguson then maneuvered Van so a medical professional could examine Van's head. *See id.* at 4:38–4:44.

Deputy Ferguson charged Ms. Van with obtaining services by false pretenses and obstructing an officer. *See* ECF No. 4, Am. Compl. ¶ 64; ECF No. 12, Answer to Am. Compl. ¶ 64. The charges were later dismissed. *See* Am. Compl. ¶ 67; Answer to Am. Compl. ¶ 67.

Van filed the present action, asserting Defendants violated her rights under federal and state law. *See* Am. Compl. ¶ 13. Counts I and II of Van's Amended Complaint claim Ferguson's Taser deployments constituted excessive force. *See id.* ¶¶ 69, 71, 74–75, 85, 87, 90–91. Count III alleges Ferguson also used excessive force after Van fell. *See id.* ¶¶ 101, 103, 106. Count IV claims Ferguson violated Van's constitutional rights by arresting her. *See id.* ¶¶ 116–17, 120. Count V asserts Ferguson "filed a criminal complaint against Ms. Van . . . without basis to do so." *Id.* ¶ 127. Counts VII and VIII allege Ferguson committed state-law battery and assault, respectively. *See id.* at 27–28. Finally, Count XI claims Ferguson intentionally caused Van to suffer emotional distress. *See id.* ¶ 187.

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence presented would allow a reasonable factfinder to find for the nonmovant. A fact is 'material' if it may influence the outcome of the suit under governing law." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) (internal citations omitted). In deciding whether to grant summary judgment, "a court must view all facts, and

reasonable inferences taken therefrom, in the light most favorable to the nonmoving party . . . ." *Id.*

## ANALYSIS

### A. Section 1983 Claims

#### *i. Counts I and II (Taser Use)*

A law-enforcement officer's use of force violates the Constitution if the officer's actions were not "objectively reasonable in light of the facts and circumstances confronting them . . . ." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). Even where an officer acted unreasonably, qualified immunity shields the officer from liability if they did "not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, the Fourth Circuit held "a police officer may *only* use serious injurious force, like a taser, when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force." 810 F.3d 892, 905 (4th Cir. 2016) (emphasis in original). The court noted that "noncompliance with police directives and nonviolent physical resistance do not create 'a continuing threat to . . . officers' safety.'" *Id.* at 904 (quoting *Meyers v. Balt. Cnty.*, 713 F.3d 723, 733 (4th Cir. 2013)).

Deputy Ferguson argues *Armstrong* does not defeat qualified immunity. *See* ECF No. 61, Def.'s Mem. 14. She points out that the facts of *Armstrong* differ substantially from the facts of this case. *See id.* at 13–14. But *Armstrong*'s holding was not limited to its facts. *See Armstrong*, 810 F.3d at 909 ("[W]e intend this opinion to clarify when taser use amounts to excessive force in, at least, some circumstances. A taser . . . may only be deployed when a police officer is

confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser."). Thus, the factual differences between *Armstrong* and this case are insufficient to avoid its holding.

Ferguson also claims that, in *Omeish v. Kincaid*, the Fourth Circuit "noted that *Armstrong* did not clearly establish any constitutional right except the 'right not to be subjected to tasing while offering stationary and non-violent resistance to a lawful seizure.'" Def.'s Mem. 6 (quoting *Omeish v. Kincaid*, 86 F.4th 546, 558 (4th Cir. 2023)). But *Omeish* does not say that. *Omeish* merely rejected the assertion that, under *Armstrong*, "the use of a taser *always* amount[s] to excessive force . . . ."[1] *Omeish*, 86 F.4th at 558 (emphasis added).

Finally, Deputy Ferguson claims three district-court opinions show *Armstrong* does not apply when a suspect attempts to flee. *See* Def.'s Mem. 7. This argument is frivolous. In each case Ferguson cites, the defendant-officer had ample reason to believe the fleeing suspect he tased posed a safety risk. *See Lathan v. City of Greenville*, No. 6:23-cv-06054, 2025 WL 2490534, at *2 (D.S.C. Aug. 29, 2025); *Mackey v. City of Gastonia*, 3:21CV544, 2022 WL 16924127, at *3 (W.D.N.C. Nov. 14, 2022); *Adams v. Dodrill*, Civ. A. No. 2:24-00315, 2026 WL 2126480, at *11 (S.D. W. Va. June 24, 2026).

Here, it is genuinely disputed whether Ms. Van posed a safety risk when Deputy Ferguson tased her. In response to requests for admissions, Ferguson confirmed Van was unarmed and not striking or attempting to strike anyone when Ferguson tased her. *See* ECF No. 53, Ex. 1, at 32–33. Accordingly, a reasonable jury could conclude Ferguson violated the rule set out in *Armstrong*.

[1] Even if *Omeish* purported to limit *Armstrong*'s holding, the Court would disregard it. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) ("When published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting *en banc* or the Supreme Court.").

Since this rule was clearly established at the time of the tasing incident, Ferguson is not entitled to summary judgment.

*ii. Count III (Post-Taser Contact)*

Ms. Van also claims Deputy Ferguson used excessive force after Van fell. But she has never specified which of Ferguson's actions constituted excessive force. A video of the incident shows Ferguson helping Van sit up, handcuffing her, and then shifting her body a few feet so a medical professional could better examine her head. *See* Video 1, at 3:05–3:59, 4:38–4:44. No reasonable juror would find these actions unreasonable. The Court will grant summary judgment on Count III.

*iii. Count IV (False Arrest)*

"[T]here is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause." *Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "It 'requires only a probability or substantial chance of criminal activity . . . .'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).

Deputy Ferguson claims she arrested Ms. Van for obtaining services by false pretenses and for obstructing an officer. Def.'s Mem. 9–10. West Virginia law defines the theft of services as "obtain[ing] labor, services, or any other such thing of value from another by any false pretense, token or representation, with intent to defraud . . . ." W. Va. Code § 61-3-24(d). West Virginia law also makes it unlawful to "hinder" or "obstruct" a law-enforcement officer "by threats, menaces, [or] acts . . . ." *Id.* § 51-5-17(a).

Deputy Ferguson had probable cause to believe Ms. Van obtained services by false pretenses. When Ferguson arrested Van, Mr. Wilks had told Ferguson about Van's theft, and Van had confirmed she refused to pay for Express Oil's work.

Van argues Ferguson lacked probable cause because she did not visit Express Oil to review evidence until after the arrest and based the arrest solely on "uncorroborated merchant hearsay . . . ." ECF No. 69, Pl.'s Resp. 14; *see id.* at 13. But Van cites no authority suggesting an officer must complete a full investigation and review all available evidence to obtain probable cause. Nor does she explain why hearsay cannot support probable cause. Also, Wilks's claims were not "uncorroborated"—Van confirmed she refused to pay for Express Oil's work.

Ms. Van also argues Deputy Ferguson was "aware of facts negating the intent-to-defraud element" because Van had told Ferguson that Express Oil damaged her vehicle. Pl.'s Resp. 14. The Court does not understand this argument. Van's claim that Express Oil damaged her vehicle is completely consistent with Mr. Dement's claim that Van obtained possession of the vehicle by falsely stating she wanted to test-drive it.

Deputy Ferguson also had probable cause to believe Ms. Van obstructed a law-enforcement officer. Footage of the incident shows Van resisting arrest. Her conduct could be construed as obstructing Ferguson's authority.

But even though Ferguson had probable cause to believe Van committed a crime, a jury could conclude she committed a false arrest. Ferguson told Van she would not arrest her if Van accompanied her to Express Oil to pay her bill. Ferguson arrested Van after Van refused to do so. Accordingly, the evidence suggests Ferguson did not arrest Van because Van committed a crime but because Van refused to comply with Ferguson's order to pay a debt. If a jury concluded this was, in fact, the real basis for the arrest, qualified immunity would not shield Ferguson from

liability. It is clearly established that an officer may not arrest someone for conduct that does not violate the law. *See Rogers v. Pendleton*, 249 F.3d 279, 292 (4th Cir. 2001). Thus, Ferguson is not entitled to summary judgment on Count IV.

*iv. Count V (Malicious Prosecution)*

A defendant is liable for malicious prosecution under § 1983 if "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). As discussed above, a reasonable jury could conclude Ms. Van's seizure was "unsupported by probable cause." Further, it is undisputed that Deputy Ferguson caused Van's seizure and that criminal proceedings terminated in Van's favor. That Ferguson's theft and obstruction allegations were supported by probable cause does not defeat Van's claim. *See Chiaverini v. City of Napoleon*, 602 U.S. 556, 563 (2024) ("[T]he bringing of one valid charge in a criminal proceeding should not categorically preclude a claim based on the Fourth Amendment."). Accordingly, the Court will deny Ferguson's Motion with respect to Count V.

**B. State Law Claims**

Ms. Van raises state-law claims of battery, assault, and the intentional infliction of emotional distress. Deputy Ferguson argues the West Virginia Tort Claims and Insurance Reform Act (WVTCA) immunizes her from these claims. *See* Def.'s Mem. 16. The WVTCA provides that "[a]n employee of a political subdivision is immune from liability unless . . . (1) . . . her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) . . . her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by" statute. W. Va. Code § 29-12A-5(b).

Ms. Van argues the WVTCA does not apply because the "record would permit a jury to find recklessness at minimum . . . ." Pl.'s Resp. 17. The Court agrees. Deputy Ferguson knew tasing someone could cause them to fall and suffer a serious injury. *See* Ferguson Dep. 36–37, 232–33; ECF No. 54, Ex. A 35, 37. Yet she did so without giving a warning first. Video 1, at 2:56–2:57. Since a reasonable jury could conclude Ferguson acted recklessly, the WVTCA does not necessarily defeat Plaintiff's state-law claims.

*i. Counts VII and VIII (Battery and Assault)*

The parties agree Ms. Van's battery and assault claims are governed by the same standard as her § 1983 excessive-force claims. *See* Def.'s Mem. 17; Pl's Resp. 16. Since two of Van's excessive-force claims survive summary judgment, Counts VII and VIII do as well.

*ii. Count XI (Intentional Infliction of Emotional Distress)*

To "prevail on a claim for intentional or reckless infliction of emotional distress," a plaintiff must establish:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998).

Deputy Ferguson argues Ms. Van's emotional-distress claim fails because a jury could not find that Ferguson's actions were "outrageous." *See* Def.'s Mem. 19. The Court agrees. Even if Ferguson's actions were unreasonable, the record does not suggest they went "beyond all possible bounds of decency." *Williamson v. Harden*, 585 S.E.2d 369, 373 (W. Va. 2003) (quoting *Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E.2d 149, 157 (W. Va. 1995)). Ferguson tased Van after Van

refused to follow orders and after Ferguson attempted to apprehend her with lesser force. The Court will grant summary judgment as to Count XI.

**CONCLUSION**

The Court **GRANTS in part** and **DENIES in part** Deputy Ferguson's Motion for Summary Judgment (ECF No. 60). The Court **ENTERS JUDGMENT** in favor of Ferguson on Counts III and XI.

In her Response, Plaintiff asks the Court to award her costs and fees associated with responding to Ferguson's Motion. *See* Pl.'s Resp. 19. If Plaintiff wishes to pursue such an award, she should file a separate motion to that effect.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 21, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE