**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

TUYET N. VAN,

Plaintiff,

v. CIVIL ACTION NO. 3:25-0187

DESTINY NICOLE FERGUSON,
individually & in her official capacity as a
Deputy for the Cabell County Sheriff's Office,
CHUCK ZERKLE,
individually and as the former Elected Sheriff of
Cabell County, West Virginia,
DOUG ADAMS,
individually and as the now Elected Sheriff of
Cabell County, West Virginia,
CABELL COUNTY COMMISSION,
a West Virginia political subdivision, and
JOHN DOE 1-10,

Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Tuyet N. Van's Motion to Exclude or Limit the Testimony of Defendants' Expert Matthew Greely (ECF No. 70). For the reasons stated below, the Court **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

## BACKGROUND

Defendant Destiny Nicole Ferguson, a Deputy for the Cabell County Sheriff's Office (CCSO), tased Ms. Van twice after unsuccessfully trying to apprehend her. *See* ECF No. 64, Video 1, at 1:00–1:18, 2:48–3:02. As a result, Van fell and struck her head. *See id.* at 3:02–3:05. Van sued, claiming Ferguson's use of force violated federal and state law. *See* ECF No. 4 ¶ 13.

Defendants retained Matthew Greely as an expert witness and plan to call him to testify at trial. *See* ECF No. 53, Ex. E 1.[1] Mr. Greely is a police officer and Taser certification instructor. *See id.* 5, 7. In his report, Greely opines that (1) Deputy Ferguson's use of force was "objectively reasonable," *id.* at 19, (2) Van "intentionally fled," engaged in "intentional deception," and was "willing to disregard lawful instructions," *id.* at 20, (3) Van committed "aggressive acts", *id.* at 18, (4) Van "continued to physically resist" after Ferguson tried to handcuff her, *id.* at 23, and (5) Van's fall and injury were "known and foreseeable" effects of the "neuromuscular incapacitation" occasioned by the Taser, *id.* at 25. Greely also plans to narrate videos of the incident while providing commentary on "what factors an officer takes into consideration during a police encounter, what factors are depicted in the videos, and how Deputy Ferguson's actions comport with those factors." ECF No. 78, Defs.' Resp. 14. Van's Motion asks the Court to preclude Greely from (1) offering these opinions, (2) narrating the videos, (3) "endors[ing] one version of the disputed facts," or (4) "premis[ing] any opinion of facts foreclosed by [Defendants'] Rule 36 admissions . . . ."[2] ECF No. 71, Pl.'s Mem. 12; ECF No. 79, Pl.'s Reply 13.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

[1] Defendants' disclosure of Mr. Greely and Greely's expert report have been filed as a single document. The disclosure and report are separately paginated. When citing to a specific page in either, the Court will use the page number in the CM-ECF heading at the top of the page.

[2] Van also asks the Court to preclude Greely from offering any opinions that were not included in his Rule 26(a)(2)(B) disclosure. *See* ECF No. 79, at 13. Such a request is premature. Under Federal Rule of Civil Procedure 37(c), "[i]f a party fails to . . . identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Defendants have not indicated Greely will offer an undisclosed opinion at trial, and the Court cannot determine whether a hypothetical failure to disclose an opinion is substantially justified or harmless.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"[H]elpfulness to the trier of fact is [the] 'touchstone'" of the Rule 702 inquiry. *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Friendship Heights Assocs. v. Koubek*, 785 F.2d 1154, 1159 (4th Cir. 1986)). "Expert testimony that merely states a legal conclusion is less likely to assist the jury . . . ." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002).

## ANALYSIS

Ms. Van's Memorandum puts forward several arguments in favor of limiting Mr. Greely's testimony. The Court understands some of these arguments to apply to each of Greely's challenged opinions. Other arguments relate to only one or some of the opinions. The Court will address the general objections first and then discuss the opinion-specific arguments.

### A. General Objections

#### *i. Credibility Determinations*

Ms. Van claims Mr. Greely's report "makes . . . credibility determinations" by "credit[ing] the deputy's account and discard[ing] Ms. Van's . . . ." Pl.'s Mem. 8. But Van does not cite any portion of the report in support of this argument, let alone explain how the report makes credibility determinations. The Court will not limit Greely's testimony on this basis.

#### *ii. Reliable Methodology*

Ms. Van also asserts Mr. Greely's report "identifies no methodology beyond Mr. Greely's own experience and a . . . recitation of the 'totality of the circumstances." *Id.* at 10. She faults

Greely for failing to show "how [his] experience is reliably applied to the facts." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

The Court is unpersuaded. Mr. Greely's report thoroughly describes his methodology:

> This process begins with a comprehensive review of all materials provided to me. . . . I evaluate the factual record in its entirety . . . After I establish a factual foundation, I apply my nearly 20 years of law enforcement experience. This includes my work as a patrol officer, investigative detective, swat team tactical operator and trainer, police academy instructor, policy advisor, and use-of-force consultant. . . . . My assessments are guided by nationally recognized standards, departmental policies, legal precedents, and best practices in policing, including use-of-force protocols, tactical decision-making, and officer conduct under the totality of the circumstances. I also rely on nationally accepted and widely recognized law enforcement organizations that establish best practices and model policies for law enforcement agencies.

ECF No. 53, Ex. E 10–11; *see also id.* at 13–17 (describing how law-enforcement agencies generally evaluate uses of force). Greely's methodology relies on much more than mere experience. The Court will not limit Greely's testimony on this basis.

*iii. Contradicting Record Evidence*

Ms. Van claims Deputy Ferguson's testimony and Rule 36 admissions contradict Mr. Greely's report. *See* Pl.'s Mem. 10–11. In the admissions, Ferguson confirmed Van "was not armed with a firearm" and was not striking or attempting to strike anyone when Ferguson tased her. ECF No. 53, Ex. A 32–33. Ferguson also testified Van was "not violent" when she deployed the Taser the first time. ECF No. 60, Ex. 2, at 228–29.

Van argues this evidence contradicts two of Greely's "assumptions": (1) that Van was "violent" and "threatening" and (2) that Ferguson's Taser deployment was "measured" and "compliance-directed." Pl.'s Mem. 10–11. But Van does not cite any parts of the report to support her characterization of its assumptions. Indeed, the report never describes Van as "violent." While it suggests she committed "aggressive acts," this does not necessarily refer to violence. Perhaps

these "aggressive acts" refer to conduct that a video of the incident clearly shows: Van physically resisting arrest. *See* Video 1, at 0:00–1:04, 1:13–1:18, 3:11–3:56. Meanwhile, Van has not pointed to any evidence suggesting Ferguson's Taser deployments were aimed at anything other than securing Van's compliance. Finally, whether Ferguson's actions were "measured" is highly subjective. The Court will not limit Greely's testimony on this basis.

*iv. Use of a Policy-Compliance Benchmark*

Finally, Ms. Van argues the Court should limit Greely's opinions because his report assesses Ferguson's actions based on their compliance with CCSO policy. *See* Pl.'s Mem. 11. This policy, she claims, is itself unconstitutional. *See id.* The Court does not understand this argument. If the CCSO's policy is unconstitutional, an opinion that Ferguson complied with the policy would be highly relevant to whether Ferguson herself violated the Constitution. The Court will not limit Greely's testimony on this basis.

**B. Opinion-Specific Objections**

*i. Opining on Reasonableness*

Mr. Greely's report asserts that Deputy Ferguson's actions were "objectively reasonable." As Ms. Van points out, the objective reasonableness of Ferguson's actions is precisely what the jury will be asked to determine in this case. *See* Pl.'s Mem. 4. "[O]pinion testimony that . . . draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006).

According to Defendants, Mr. Greely intends to "describe compliance with professional standards taught to officers nationwide, not application of the Fourth Amendment analysis." Def.'s Resp. 6. They claim his "use of terms like 'objectively reasonable' . . . reflects terminology routinely used among law enforcement." *Id.* at 3. But Greely's understanding of his own testimony

is irrelevant. What matters is how the jury will interpret it. If Greely described Deputy Ferguson's actions as "objectively reasonable," a jury would likely understand him to be offering a legal opinion. After all, objective reasonableness is the applicable legal standard for Ms. Van's § 1983 claims. *See* ECF No. 81, at 4. Accordingly, the Court will preclude Greely from testifying that Ferguson's conduct was "reasonable." *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (stating expert testimony "that has a greater potential to mislead than to enlighten should be excluded").

*ii. Inadequate Qualifications*

Ms. Van asserts Mr. Greely is unqualified to opine that (1) Van's fall and injury were "known and foreseeable" effects "associated with neuromuscular incapacitation" and (2) Van "intentionally fled," engaged in "intentional deception," and was "willing to disregard lawful instructions." Pl.'s Mem. 6–7. She argues Greely has no medical background and has "no more insight into" Van's state of mind "than the jurors will." *Id.*

The Court will allow Ms. Greely to testify that Ms. Van's fall and injury were foreseeable. Greely is not a medical professional, but as a Taser instructor, he is qualified to describe the standard effects of a Taser deployment and opine whether Van's fall and injury were consistent with those effects.

However, the Court will exclude testimony about Ms. Van's state of mind. Defendants argue Mr. Greely's "characterizations describe observable conduct[,] . . . not Plaintiff's state of mind." Defs.' Resp. 11–12. But intent and willingness are, of course, states of mind. Also, if Greely's testimony will merely "describe observable conduct," his testimony will not help the jury.

Defendants say they "do not object to limiting [Greely's] testimony to describe [Ms. Van's] conduct itself and how officers are trained to assess flight risk based on such conduct." Defs.'

Resp. 12. Van confirms this limitation "is the relief Plaintiff's motion requests." The Court will adopt Defendants' proposal.

*iii. Resolving Disputed Facts*

Ms. Van argues a couple of Mr. Greely's opinions—that Van committed "aggressive acts" and "continued to physically resist" after Deputy Ferguson tried to handcuff her[3]—impermissibly resolve disputed facts. *See* Pl.'s Mem. 7. She also argues Greely's video commentary should be excluded on this basis. *See id.* at 8.

The parties dispute whether expert opinions should be excluded when they resolve contested facts. *Compare* Pl.'s Mem. 7 ("An expert may not offer 'opinions, given his particular interpretations of the contested facts.'" (quoting *Clem v. Corbeau*, 98 F. App'x 197, 200 (4th Cir. 2004))) *with* Defs.' Resp. 12 ("[Q]uestions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility." (quoting *Mountain Valley Pipeline, LLC v. 9.89 Acres of Land*, 127 F.4th 437, 445 (4th Cir. 2025))). But even if Ms. Van is right, she fails to explain which "contested facts" Mr. Greely's opinions rely on. The Court will not exclude testimony simply because one party asserts, without explanation or citations to the record, that the testimony resolves a factual dispute.

*iv. Defendants' Summary-Judgment Briefs Showing Unhelpfulness*

Finally, Ms. Van argues Defendants' summary-judgment briefs show Mr. Greely's video commentary and testimony about "[T]aser mechanics" would not help the jury. *See* Pl.'s Mem. 8–9.

In their briefs, Defendants suggested it was undisputed Van resisted arrest and tried to flee from Deputy Ferguson. *See* ECF No. 61, at 13; ECF No. 66, at 10. The Court agrees that, if this

[3] Van also argues Greely's opinion that Van "intentionally fled" impermissibly resolves disputed facts. *See* Pl.'s Mem. 7. But the Court has already concluded it will exclude this opinion.

were undisputed, expert testimony that Van resisted arrest and tried to flee would not help the jury. But according to Defendants, Greely's video commentary also "provides insight into what factors an officer takes into consideration during a police encounter, what factors are depicted on the videos, and how Deputy Ferguson's actions comport with those factors." Defs.' 14. Such commentary would help the jury even if it relates to undisputed facts.

Van also argues "expert testimony about [T]aser mechanics" would not help the jury because Defendants' briefs indicated such mechanics are undisputed. Pl.'s Mem. 9. But in her Reply, Van asks the Court to expressly authorize Greely to "describe the general training officers receive on [T]aser function and effects . . . ." Pl.'s Reply 13. To the extent there is a difference between "Taser mechanics" and "Taser function and effects," Van has not explained what it is. Given Van's apparent inconsistency, the Court will not exclude testimony about Taser mechanics.

## CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Exclude or Limit the Testimony of Defendants' Expert Matthew Greely (ECF No. 70). The Court **ORDERS** as follows:

1. Mr. Greely may describe generally accepted law enforcement practices and training and whether Deputy Ferguson's conduct was consistent with or deviated from them but may not testify that any conduct was "objectively reasonable," "reasonable," or "unreasonable."
2. Greely may describe the information available to Ferguson and how officers are trained to assess flight risk but may not characterize Ms. Van's intent, motives, or state of mind.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 21, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE