**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

TUYET N. VAN,

Plaintiff,

v. CIVIL ACTION NO. 3:25-0187

DESTINY NICOLE FERGUSON,
individually & in her official capacity as a
Deputy for the Cabell County Sheriff's Office,
CHUCK ZERKLE,
individually and as the former Elected Sheriff of
Cabell County, West Virginia,
DOUG ADAMS,
individually and as the now Elected Sheriff of
Cabell County, West Virginia,
CABELL COUNTY COMMISSION,
a West Virginia political subdivision, and
JOHN DOE 1-10,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Cabell County Commission (CCC), Chuck Zerkle and Doug Adams's Motion for Summary Judgment (ECF No. 62, Defs.' Mot.). For the reasons stated below, the Court **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

**BACKGROUND**

Following an accident, Plaintiff Tuyet N. Van took her vehicle to Express Oil Change & Tire to have it repaired. *See* Defs.' Mot., Ex. 2, Ferguson Dep. 191. When Ms. Van came to pick up her vehicle, she asked to test-drive it before paying for the repairs. Defs.' Mot., Ex. 1, CCSO Rpt. 3. An Express Oil employee, Bobby Dement, agreed but told Van he would need to accompany her. *See id.* Dement claims Van got in the vehicle and locked the doors before Dement

could join her. *See id.* According to Dement, Van then sped away and parked her vehicle across the street at Sunny Nails, a nail salon where she worked. *See id.*; Ferguson Dep. 195.

Express Oil's manager, Harry Wilks, went to the salon and asked Van to pay her bill. CCSO Rpt. 3. Van refused. *Id.* Mr. Wilks then contacted law enforcement. *Id.*

Defendant Destiny Nicole Ferguson, a Deputy with the Cabell County Sheriff's Office (CCSO), went to Sunny Nails to speak with Ms. Van. *See id.* Deputy Ferguson asked Ms. Van to accompany her to Express Oil so Van could pay her bill. *See id.* Van refused. *See id.* Ferguson then told Van "[y]ou're either gonna come now, or you're gonna go to jail." *See* ECF No. 64, Video 1, at 0:01–0:04.

Ms. Van started walking away from Ferguson. *See id.* at 0:09–0:16. Ferguson eventually handcuffed one of Van's wrists, but Van pulled her arm away as Ferguson tried to secure the other wrist. *See id.* at 1:13–1:18. Ferguson then shot Ms. Van with her Taser. *See* Ferguson Dep. 294–95. Van fell to the ground, striking her head. Video 1, at 3:02–3:05.

According to Defendants' records, Deputy Ferguson received Taser certification training in 2021. *See* ECF No. 73, Pl.'s Resp., Ex. 1, at 4. Ferguson testified that then-Chief Deputy Adams was the one who trained her. Ferguson Dep. 30. During his deposition, Adams was asked whether it is acceptable to use a Taser on a person who "turns around [and] starts to walk away" after being told "to stop, put their hands behind their back, [and] quit fleeing. . . ." ECF No. 53, Ex. G 70. He said, "Yeah. I think it would be okay." *Id.* Ferguson, similarly, testified she believed she could "tase a fleeing suspect who is not trying to cause harm to [her] or others." Ferguson Dep. 219.

Ms. Van filed the present action, asserting Defendants violated her rights under federal and state law. *See* ECF No. 4 ¶ 13. Count X of Van's Amended Complaint asserts Defendants CCC,

Zerkle, and Adams negligently trained and supervised Deputy Ferguson. *See id.* ¶ 182. Count XI alleges Defendants intentionally caused Van to suffer emotional distress. *See id.* ¶ 187.

Defendants' Motion originally asked the Court to enter summary judgment on Count X alone. *See generally* ECF No. 63, Defs.' Mem. In her Response, Plaintiff noted Defendants' failure to also seek summary judgment on Count XI. *See* Pl.'s Resp. 1 n.1. According to Defendants' Reply, "Defendants did not perceive [Count XI] to [include] individual-capacity claims against Sheriff Adams and Chief Deputy Zerkle . . . ." ECF No. 75, Defs.' Reply 6. They ask the Court for leave to address Count XI in their Reply even though they did not discuss it in their opening brief. *See id.*

In addition, Plaintiff's Response asks the Court to establish certain facts pursuant to Federal Rule of Civil Procedure 56(g). *See* Pl.'s Resp. 16.

## LEGAL STANDARD

### A. Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence presented would allow a reasonable factfinder to find for the nonmovant. A fact is 'material' if it may influence the outcome of the suit under governing law." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) (internal citations omitted). In deciding whether to grant summary judgment, "a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party . . . ." *Id.*

**B. Leave to Raise Argument in Reply**

The Court's Amended Scheduling Order required the parties to file dispositive motions in this case by July 20, 2026. *See* ECF No. 49 ¶ 3. Since it discusses Count XI for the first time, Defendants' Reply is effectively a new dispositive motion.

Defendants requested leave to address Count XI in their Reply after the Amended Scheduling Order's dispositive-motion deadline had passed. Accordingly, the Court must apply the "good cause" standard found in Federal Rule of Civil Procedure 16(b)(4) to determine whether the request should be granted. *See Eichin v. Ethicon Endo-Surgery, LLC*, 173 F.4th 124, 127 (4th Cir. 2026) (stating "Rule 16(b)(4)'s good cause standard must be satisfied" when a motion is made after the scheduling order's deadlines have passed).

The Fourth Circuit has held that "a finding of good cause under Rule 16 depends on the diligence of the party seeking amendment." *Id.* (quoting *Faulconer v. Centra Health, Inc.*, 808 Fed. App. 148, 152 n.1 (4th Cir. 2020) (collecting cases)). "Only diligent efforts to comply with the scheduling order can satisfy Rule 16's good cause standard." *Bhambhani v. Neuraxis, Inc.*, Civ. A. No. 22-1764, 2024 WL 2815063, at *2 (4th Cir. June 3, 2024). The good cause standard cannot be met if the movant was simply careless. *W. Virginia Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D. W. Va. 2001).

**C. Establishing Facts Under Rule 56(g)**

"If the court does not grant all the relief requested by" a summary-judgment motion, "it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the facts as established in the case." Fed. R. Civ. P. 56(g).

## ANALYSIS

### A. Count X (Negligent Training and Supervision)

The parties dispute what a plaintiff must show to establish negligent training and supervision under West Virginia law. They agree "a claim based upon negligent supervision . . . . requires a showing of duty, breach, causation, and damages." *Camden-Clark Mem. Hosp. Corp. v. Marietta Area Healthcare, Inc.*, 922 S.E.2d 324, 328–29 (W. Va. 2025); *see* Defs.' Mem. 5; Pl.'s Resp. 12. But Defendants argue a plaintiff must also show the employer knew the employee had a "dangerous propensity . . . ." Defs.' Mem. 7.

In *Camden-Clark*, the Supreme Court of Appeals of West Virginia noted that "[t]he question of whether the employer's duty to supervise the employee exists and extends to the plaintiff focuses on 'a connection between the employer's knowledge of the employee's dangerous propensities and the harm caused.'" 922 S.E.2d at 329 (quoting *Keller v. Koca*, 111 P.3d 445, 450 (Colo. 2005)). The Court does not read *Camden-Clark* as establishing an absolute requirement than an employer have knowledge of a "dangerous propensity." *Camden-Clark* described the "employee's dangerous propensities" as a mere "focus" of the employer-duty inquiry. Also, in *Mozingo v. Barnhart*, the Supreme Court of Appeals upheld a verdict based on negligent training without referencing any dangerous-propensity requirement. *See* 285 S.E.2d 497, 499–500 (W. Va. 1981).

Here, there is no evidence suggesting Defendants knew Deputy Ferguson had any sort of "dangerous propensity." But a reasonable jury could still find that Ferguson's alleged misconduct was foreseeable. Deputy Adams, who trained Ferguson to use a Taser, testified "it would be okay" to tase a fleeing nonviolent suspect. Ferguson said she holds the same view. A jury could infer from Adams and Furguson's testimony that Ferguson was never trained she could "*only* use . . . a

taser . . . when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger . . . .” *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 905 (4th Cir. 2016) (emphasis in original). If Ferguson was not, in fact, trained on that rule, it may have been foreseeable that she would violate it.

A jury could also conclude the alleged deficiency in Ferguson’s training caused her alleged misconduct. In a separate Order, the Court concluded Ferguson may have violated *Armstrong*’s immediate-danger rule by tasing Ms. Van. *See* ECF No. 81, at 5. Accordingly, if a jury finds Defendants failed to train Ferguson on that rule, it could also conclude this omission caused Van’s injuries. Van’s negligent-training-and-supervision claim survives summary judgment.

**B. Count XI (Intentional Infliction of Emotional Distress)**

*i. The Court Grants Defendants Leave*

Defendants request leave to address Count XI for the first time in their Reply. They suggest there is good cause to grant leave because they could not have reasonably known Count XI stated claims against Adams and Zerkle in their individual capacity. *See* Defs.’ Reply 7. Ms. Van argues Defendants were on notice of these claims because Defendants (1) addressed Count XI in their answer, (2) raised statutory immunity as an affirmative defense, (3) moved to dismiss Count XI, and (4) in their motion to dismiss, stated Count XI “alleges . . . intentional . . . infliction of emotional distress against the CCC, CCSO, Sherriff Zerkle, and Chief Deputy Adams.” ECF No. 77, at 2 (quoting ECF No. 11, at 3); *see id.* at 7–8.

The Court agrees with Defendants. Ms. Van’s Complaint mostly fails to specify which Counts are brought against which defendants and in what capacity. *See* ECF No. 4, at 11, 14, 17, 20, 22, 24, 27–32. Further, none of Defendants’ previous filings indicate they knew Count XI stated individual-capacity claims against Adams and Zerkle. Defendants’ Answer, including its

Affirmative Defenses section, says nothing about which claims were brought against whom. *See generally* ECF No. 12. Defendants' Motion to Dismiss, meanwhile, asked the Court to dismiss Count XI with respect to the CCC but not with respect to Adams and Zerkle. If anything, this suggests Defendants did not believe Count XI raised individual-capacity claims against Adams and Zerkle. While the Motion stated Count XI "alleges intentional infliction of emotional distress against" Adams and Zerkle, this is completely consistent with Defendants' alleged understanding that Count XI only raised *official*-capacity claims.

Since Defendants could not have reasonably known Count XI stated claims against Adams and Zerkle in their individual capacity, the Court will grant Defendants leave.

*ii. Defendants Are Entitled to Summary Judgment on Count XI*

To "prevail on a claim for intentional or reckless infliction of emotional distress," a plaintiff must establish:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998).

Defendants argue Adams and Zerkle's conduct was not "outrageous." *See* Defs.' Reply 9. The Court agrees. No reasonable jury would find that Defendants' alleged failure to train Deputy Ferguson on *Armstrong*'s immediate-danger rule was "beyond all possible bounds of decency." *Williamson v. Harden*, 585 S.E.2d 369, 373 (W. Va. 2003) (quoting *Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E.2d 149, 157 (W. Va. 1995)). The Court will grant summary judgment on Count XI.

### C. Request to Establish Facts

Plaintiff's Response asks the Court to "establish" that (1) the CCSO "policy in effect on April 5, 2024 permitted taser deployment against unarmed individuals not physically resisting, on hard surfaces, without a warning requirement," (2) the CCC "had pre-incident notice of at least one CCSO taser deployment causing injury," and (3) the CCC "has a duty to train its officers not to violate citizens' constitutional rights . . . ." Pl.'s Resp. 16.

The Court declines to adopt these statements. Even if these "facts"[1] are "undisputed," the parties will likely frame them quite differently at trial. The Court is not inclined to put its thumb on the scale by sharing Plaintiff's preferred framing with the jury.

## CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (ECF No. 62). The Court **GRANTS** Defendants leave to discuss Count XI for the first time in their Reply. The Court **DENIES** Plaintiff's request to establish facts under Rule 56(g). The Court **ENTERS JUDGMENT** in favor of Defendants on Count XI.

In her Response, Plaintiff asks the Court to award her costs and fees associated with responding to Defendants' Motion. *See* Pl.'s Resp. 16–17. If Plaintiff wishes to pursue such an award, she should file a separate motion to that effect.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

[1] Ms. Van's statement that the CCC "has a duty to train its officers not to violate citizens' constitutional rights," is a statement of law, not a statement of fact.

ENTER: August 21, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE